# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:25-cv-00149-MR-WCM

| | |
|---|---|
| MICHAEL P. SHEPARD and MELISSA J. SHEPARD, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>LUCID GROUP USA, INC., )<br><br>Defendant. ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Defendant's Motion for Judgment on the Pleadings. [Doc. 24].

## I. PROCEDURAL BACKGROUND

On May 23, 2025, the Plaintiffs Michael P. Shepard and Melissa J. Shepard filed a Complaint alleging that the Defendant Lucid Group USA, Inc. sold them a defective vehicle and then failed to repair it as promised. [Doc. 1 at ¶¶ 7-69]. The Plaintiffs bring nine causes of action against the Defendant: (1) cancellation under the Magnuson-Moss Act, 15 U.S.C. §§ 2301-2312; (2) breach of contract under N.C. Gen. Stat. § 25-2-714; (3) breach of express warranties under N.C. Gen. Stat. § 25-2-313; (4) trespass to chattels under N.C. Gen. Stat. § 99A-1; (5) negligence; (6)

damage in bailment under N.C. Gen. Stat. § 99A-1; (7) negligent misrepresentation; (8) breach of the implied covenant of good faith and fair dealing; and (9) unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1. [Doc. 1 at ¶¶ 70-149].

On August 4, 2025, the Defendant filed an Answer. [Doc. 10]. After several months of discovery, on March 19, 2026, the Defendant filed the present Motion for Judgment on the Pleadings, arguing that all nine of the Plaintiffs' causes of action fail to state a claim upon which relief can be granted. [Doc. 24]. On April 1, 2026, the Plaintiffs filed a Response. [Doc. 26]. On April 8, 2026, the Defendant filed a Reply. [Doc. 29]. Having been fully briefed, this matter is now ripe for disposition.

## II. STANDARD OF REVIEW

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Motions under Rule 12(c) can be based on the failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(h)(2)(B). "Rule 12(c) motions are governed by the same standard as motions brought under Rule 12(b)(6)." Massey v. Ojaniit, 759 F.3d 343, 347 (4th Cir. 2014) (internal quotation marks omitted).

Therefore, to survive a motion for judgment on the pleadings for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks omitted).

In considering the Defendant's Motion for Judgment on the Pleadings, the Court accepts the allegations in the Complaint as true and construes them in the light most favorable to the Plaintiffs. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009). Although the Court must accept any well-pleaded facts as true and construe such facts liberally, it is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Id. at 255.

Determining whether a complaint states a plausible claim for relief is "a context-specific task," Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted), which requires the Court to assess whether the factual allegations of the complaint are sufficient "to raise a right

to relief above the speculative level," Twombly, 550 U.S. at 555.  As the

Fourth Circuit has explained:

> To satisfy this standard, a plaintiff need not forecast evidence sufficient to prove the elements of the claim.  However, the complaint must allege sufficient facts to establish those elements.  Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is probable, the complaint must advance the plaintiff's claim across the line from conceivable to plausible.

Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012) (citations and internal

quotation marks omitted).

## III.    FACTUAL BACKGROUND

Accepting the Plaintiffs' well-pled allegations as true, the following is a

recitation of the relevant facts.

The Defendant designs, builds, and sells luxury electric vehicles.  [Doc.

1 at ¶ 7].    In September 2022, the Plaintiffs entered into a purchase

agreement (the "Agreement") with the Defendant to purchase a 2022 Lucid

Air Grand Touring (the "Vehicle") for $145,198.   [Id. at ¶¶ 8-9].   Under the

Agreement, the Vehicle was covered by a warranty (the "Warranty") that

states, in relevant part:

> Lucid will, without charge and as determined by Lucid at its discretion, repair, replace, or adjust all parts on your new vehicle that malfunction or fail during the normal use during the applicable coverage period due to a manufacturing defect in factory-supplied

4

> materials or factory workmanship provided your vehicle has been properly operated and maintained in accordance with all requirements in the owner's manual and any other documentation we may provide you, and was taken to a Lucid Service Center for a warranted repair during the warranty period.

[Id. at ¶ 12].

On September 28, 2022, the Defendant delivered the Vehicle to the Plaintiffs. [Id. at ¶ 10]. At the delivery, one of the Defendant's employees inspected the Vehicle. [Id. at ¶ 13]. After the inspection, the employee admitted that the Vehicle contained several manufacturing defects, including "noticeable paint chips, stained carpet, and damaged trim." [Id.]. The Defendant's employee took pictures of the defects, assuring the Plaintiffs that the defects were covered by the warranty and would be repaired by the Defendant. [Id. at ¶ 16]. The Plaintiffs accepted delivery of the Vehicle, despite its defects, because of the employee's assurances. [Id. at ¶ 19].

On September 29, 2022, the Defendant emailed the Plaintiffs asking for photographs of the Vehicle's defects. [Id. at ¶ 20]. The Plaintiffs immediately responded, informing the Defendant that its employee had already obtained such photographs the day before at the inspection. [Id.]. This was the last time the Defendant communicated with the Plaintiffs for several months, despite the Plaintiffs' many attempts to obtain status updates. [Id. at ¶¶ 21-23]. Over this same time period, the Defendant also

5

failed to provide the Plaintiffs with the paperwork required to register the Vehicle. [Id. at ¶¶ 28-29]. It was not until December 2022 that the paperwork was provided. [Id.].

In early 2023, the Defendant's Service Center called the Plaintiffs, but provided no substantive update about the repairs to the Vehicle. [Id. at ¶¶ 23-24]. It simply stated that the Service Center had no current availability and that it would contact the Plaintiffs once availability opened up. [Id.]. The Service Center never followed up on its promise to contact the Plaintiffs, despite many inquiries from the Plaintiffs. [Id. at ¶¶ 26-27].

On July 17, 2023, Plaintiff Michael Shepard was driving the Vehicle on the highway when the Vehicle "spontaneously shut down." [Id. at ¶ 30]. The Plaintiff was able to safely navigate the Vehicle to a nearby parking lot without sustaining injury, but the shutdown rendered the Vehicle "unusable and inaccessible." [Id. at ¶¶ 31-32]. The Plaintiff immediately contacted the Defendant to have the Vehicle towed to a Service Center by the Defendant's Roadside Assistance to remedy the power shutdown. [Id. at ¶¶ 33-34]. The Plaintiff also asked the Defendant to repair the LCD screen and recalibrate the speedometer. [Id. at ¶ 34].

On July 19, 2023, the Defendant's Service Center called the Plaintiffs and informed them that the Vehicle's rear end had been damaged while it

6

was in the care of the Defendant's Roadside Assistance, either during transit or upon delivery. [Id. at ¶ 35]. The damage was significant, and the Vehicle had to be taken to a body shop. [Id. at ¶ 36]. The Defendant represented that it would repair both the Vehicle's damage and the Vehicle's paint protection film and ceramic coating. [Id. at ¶ 37]. The Defendant also promised to arrange a "loaner vehicle" for the Plaintiffs. [Id. at ¶ 38].

The Defendant did not provide the loaner vehicle until seven days later. [Id. at ¶ 39]. It then kept the Vehicle in its possession for almost three months, ostensibly to make the requested repairs. [Id. at ¶ 40]. During this period, the Defendant again failed to communicate, and the Plaintiffs had no knowledge of the status of the Vehicle. [Id. at ¶ 41].

On October 11, 2023, the Defendant attempted to return the Vehicle to the Plaintiffs. [Id. at ¶ 42]. However, the Vehicle was in "even worse condition" and was totally "inoperable and unusable." [Id. at ¶ 43]. Specifically, the Vehicle was missing parts; it was unsafe to operate; it made a loud thumping noise and vibrated when driven; it made a loud grinding and vibrating sound when turned in either direction; the interior leather was discolored on all the seats and trim; the leather and plastic trim on one door was cut and scratched; another door had a deep scratch; water leaked through multiple doors; the rear window was cracked; the trunk was

7

inoperable; the bumper light and camera were damaged; the frunk divider, wheel caps, and wheel covers were missing; the wheel rims were damaged; the drums and rotors were rusted; the charging port door was misaligned; wires protruded along one side; and the paint protection film and ceramic coating were not reapplied. [Id. at ¶ 45].

In addition to this new damage, the defects that had been present since the spontaneous shutdown were still present: a carpet was stained, the LCD screen was inoperable, one of the driver-side panels was scratched, the passenger-side rear window trim was scratched, and the Vehicle was inoperable because of the electrical failures. [Id. ¶ 47].

Despite having not repaired any of the damage to the Vehicle, the Defendant "demanded" that the Plaintiffs accept delivery of the Vehicle and return the loaner vehicle. [Id. at ¶¶ 48-49]. The Plaintiffs refused to sign the "Acceptance of Vehicle" form. [Id. at ¶ 51]. The Defendant retained possession of the damaged Vehicle but also took possession of the loaner vehicle, leaving the Plaintiffs with no usable vehicle. [Id. at ¶¶ 54-55].

From October 12, 2023 to November 21, 2023, the Plaintiffs sought updates from the Defendant on the repairs to the Vehicle. [Id. at ¶ 56]. On November 21, 2023, the Defendant told the Plaintiffs only that repairs were

8

"in progress." [Id. at ¶ 57]. For the next four months, the Plaintiffs received no contact from the Defendant, despite repeated inquiries. [Id. at ¶¶ 58-59].

On March 13, 2024, the Defendant directed the Plaintiffs to a particular employee to receive updates on the Vehicle. [Id. at ¶¶ 58, 60]. However, the Plaintiffs had to cycle through several different employees who all lacked information about the Plaintiffs' particular situation and the Vehicle's defects. [Id. at ¶¶ 62-63]. Eventually, on March 22, 2024, an employee offered to help the Plaintiffs begin the process of returning the Vehicle. [Id. at ¶¶ 64-65]. Soon thereafter, however, the Defendant refused to allow the return and refused to refund the Vehicle's purchase price. [Id. at ¶ 69].

## IV. DISCUSSION

### A. The Contract Claims

The Plaintiffs bring three claims based on the Agreement: (1) cancellation under the Magnuson-Moss Act, (2) breach of contract, and (3) breach of express warranties. [Doc. 1 at ¶¶ 70-100]. The Defendant argues that all three of these claims are untimely because the Agreement requires that "any claim or cause of action arising out of or related to these Terms must be filed within one (1) year after such claim or cause of action arose or be forever barred." [Doc. 1-2 at 6].

9

North Carolina courts have recognized that the natural right to contract includes the right to agree to decrease the general limitations period for bringing claims that arise out of the contract. <u>Warren v. Cielo Ventures, Inc.</u>, 926 S.E.2d 716, 718 (N.C. 2026). Parties may freely agree to such a contractual limitation so long as "(1) no statute forbids a shorter period, and (2) the shorter period is reasonable." <u>Id.</u> at 719. If the legislature has not prohibited decreasing the limitations period by contract, then courts "default to the general rule of freedom of contract." <u>Id.</u> at 720 (internal quotation marks omitted).

No North Carolina statute prohibits decreasing the limitations period for contracts governed by the State's Uniform Commercial Code. In fact, the Code specifically allows such contracts: "By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it." N.C. Gen. Stat. § 25-2-725(a).

Here, the Agreement explicitly reduced the period of limitation for claims arising out of the Agreement to one year. [Doc. 1-2 at 6]. The Plaintiffs filed this action on May 23, 2025. [Doc. 1]. The last specifically dated allegation in the Complaint took place on March 22, 2024. [<u>Id.</u> at ¶ 64]. However, the Plaintiffs allege that at some point after this March 22 conversation, the Defendant "refused to allow the return and otherwise

10

refused to refund the Vehicle's purchase price." [Id. at ¶ 69]. Thus, taking the allegations in the light most favorable to the Plaintiffs and drawing all reasonable inferences in their favor, they sufficiently allege that the Defendant committed conduct that breached the Agreement on or after May 23, 2024. Therefore, the Agreement's contractual limitation does not bar the contract claims, and the Defendant's Motion is denied as to these claims.

## B. Trespass to Chattels

The Plaintiffs' fourth cause of action is a claim for trespass to chattels under N.C. Gen. Stat. § 99A-1. [Doc. 1 at ¶¶ 101-08]. That statute reads, in relevant part: "Any abuse of, or damage done to, the personal property of another or one who is in possession thereof, unlawfully, is a trespass for which damages may be recovered." N.C. Gen. Stat. § 99A-1. The Plaintiffs allege that the Defendant violated this statute when the Defendant's Service Center took possession of the Vehicle after its electrical shutdown and damaged it, either in transit or upon delivery to the Service Center. [Id. at ¶¶ 102-04]. They argue that the "damage sustained by the Vehicle while in [the Defendant's] care, custody, and control constitutes a trespass." [Id. at ¶ 106].

A party bringing a claim for trespass to chattels must show that he "had either actual or constructive possession of the personalty or goods in

11

question at the time of the trespass," and "that there was an unauthorized, unlawful interference or dispossession of the property."  Fordham v. Eason, 351 N.C. 151, 155, 521 S.E.2d 701, 704 (1999).   While the element of possession is clearly met here, the Plaintiffs entirely fail to plead the second element.  The Complaint expressly alleges that "Mr. Shepard *permitted* Lucid Service Center to take possession of the Vehicle, following the Vehicle's spontaneous malfunction."   [Doc. 1 at ¶ 102 (emphasis added)].   The Complaint includes no allegation to the contrary.  Because the Plaintiffs have failed to plead that the Defendant's interference was unauthorized, the Defendant's Motion is granted as to this claim.

## C.   Negligence

The Plaintiffs' fifth cause of action is negligence.  [Id. at ¶¶ 109-14].  To plead a "common law claim of negligence," a party must allege "three elements: (1) a legal duty owed by the defendant to the plaintiff, (2) a breach of that legal duty, and (3) injury proximately caused by the breach."  Keith v. Health-Pro Home Care Servs., Inc., 381 N.C. 442, 450, 873 S.E.2d 567, 574 (2022).  Here, the Plaintiffs allege that the Defendant owed them a duty to exercise reasonable care in its handling of the Vehicle while the Vehicle was in the Defendant's control, and that such duty was in addition to and separate from the Defendant's duty to the Plaintiffs arising from the contract.  [Doc. 1

at ¶ 110]. They further allege that the Defendant violated its duty by damaging the Vehicle through mishandling and improper repairs. [Id. at ¶ 112]. Taking the allegations in the light most favorable to the Plaintiffs, these allegations are sufficient to state a claim for negligence. The Defendant's Motion is denied as to this claim.

### D.    Damage in Bailment

The Plaintiffs' sixth cause of action is for damage in bailment. [Id. at ¶¶ 115-21]. The Plaintiffs allege that after they relinquished possession of the Vehicle to the Defendant's Roadside Assistance, the Defendant had the "sole possession and custody" of the Vehicle, and thus, all damage caused to the Vehicle by the Defendant's negligence constitutes a trespass to bailed chattel. [Id. at ¶¶ 116-21].

"A bailment is created when a third person accepts the sole custody of some property given from another." Wilson v. Burch Farms, Inc., 176 N.C. App. 629, 640, 627 S.E.2d 249, 258 (2006) (internal quotation marks omitted). "The possession of the property by the bailee must be such that it is to the exclusion of the owner and all other persons, and that the bailee has complete control of the property." Id. A plaintiff pleads a *prima facie* case when he shows that "the property was delivered to the bailee; that the bailee accepted it and thereafter had possession and control of it; and that the

13

bailee failed to return the property or returned it in a damaged condition." Id. (internal quotation marks omitted).

Here, the Plaintiffs successfully allege that the Vehicle was delivered to the Defendant, that the Defendant accepted it, and that the Defendant returned the Vehicle in a damaged condition. [Doc. 1 at ¶¶ 37-45]. As for exclusive control, the Plaintiffs plead that "[d]uring the time that the Vehicle was in the sole possession and custody of Lucid, Lucid Roadside Assistance, and/or an authorized agent of Lucid Roadside Assistance transporting the Vehicle to Lucid Service Center," the Vehicle was damaged. [Id. at ¶ 118]. These allegations are sufficient to plead that the Defendant had exclusive control of the Vehicle after the Plaintiffs relinquished possession of it. Thus, the Complaint adequately alleges a damage in bailment claim, and the Defendant's Motion is denied as to this claim.

### E.    Negligent Misrepresentation

The Plaintiffs' seventh cause of action is negligent misrepresentation. [Id. at ¶¶ 122-36]. The Plaintiffs allege that the Defendant made "repeated representations to the Shepards that [it] would repair the Vehicle," [id. at ¶ 123], as well as representations that it "would buy back the vehicle," [id. at ¶ 129]. But the Defendant failed to repair or buy back the Vehicle. [Id. at ¶¶ 130-31].

14

To plead negligent misrepresentation, a plaintiff must allege that the defendant negligently made representations of facts that are "existing or ascertainable facts, as distinguished from a matter of opinion or *representation relating to future prospects*." Value Health Sols., Inc. v. Pharm. Rsch. Assocs., Inc., 385 N.C. 250, 274-75, 891 S.E.2d 100, 119 (2023) (internal quotation marks omitted and emphasis added). Here, all of the alleged misrepresentations concern "future prospects": repairing the Vehicle sometime in the future or buying back the Vehicle sometime in the future. These statements do not involve "existing or ascertainable facts," only contingent possibilities. Thus, the Plaintiffs have failed to plead a claim for negligent misrepresentation, and the Defendant's Motion is granted as to this claim.

### F. Breach of the Implied Covenant of Good Faith and Fair Dealing

The Plaintiffs' eighth cause of action is breach of the implied covenant of good faith and fair dealing. [Doc. 1 at ¶¶ 137-42]. The Plaintiffs allege that the Defendant's repeated failure to repair the Vehicle unfairly and unreasonably prevented the Plaintiffs from receiving the benefits they were entitled to under the Agreement. [Id. at ¶ 140]. The Defendant argues that this claim should fail because it is based on the same alleged conduct as the contract claim. [Doc. 25 at 16].

15

To bring a claim for the implied covenant of good faith and fair dealing, plaintiffs must establish "the existence of a contractual gap." Value Health Sols., Inc., 385 N.C. at 269, 891 S.E.2d at 116. This is because the "implied covenant applies only if the contract is silent as to the subject at issue." Id. (internal quotation marks omitted). The implied covenant "involves inferring contractual terms to handle developments or contractual gaps that neither party anticipated." Id. (internal quotation marks omitted). "It does not apply when the contract addresses the conduct at issue." Id. (internal quotation marks omitted).

The Agreement here is not silent as to the repair of the Vehicle. The Plaintiffs allege that the Agreement required the Defendant to deliver the Vehicle free of damage, make the repairs expressly covered by the warranty, and provide certain repair services. [Doc. 1 at ¶ 84]. The Plaintiffs also explicitly state that their implied-covenant claim is based on the Defendant preventing the Plaintiffs from receiving "the benefits to which they were entitled under the Agreement." [Id. at ¶ 140]. Taking the Plaintiffs' own construction of the Agreement as true, the implied-covenant claim is directed at conduct that is explicitly covered by the Agreement and the warranty. Thus, the Plaintiffs have failed to plausibly allege a contractual gap and the Defendant's Motion is granted as to this claim.

16

### G. Unfair and Deceptive Trade Practices

The Plaintiffs' final cause of action is for unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1. [Doc. 1 at ¶¶ 143-49]. Section 75-1.1(a) states as follows: "Unfair methods of competition in or affecting commerce, and unfair and deceptive acts or practices in or affecting commerce, are declared unlawful." For a plaintiff to plead a Chapter 75 claim, he must show (1) that the defendant "engaged in an unfair or deceptive practice," (2) that "the conduct was in or affecting commerce," and (3) that the conduct "proximately caused injury to the plaintiff." Dan King Plumbing Heating & Air Conditioning, LLC v. Harrison, 281 N.C. App. 312, 321-22, 869 S.E.2d 34, 44 (2022) (internal quotation marks omitted).

As the Plaintiffs have plausibly alleged multiple causes of action based in tort, they have stated a claim under Chapter 75. See Reid Pointe, LLC v. Stevens, No. 08 CVS 4304, 2008 WL 3846174, at *7 (N.C. Super. Aug. 18, 2008) ("Generally, proof of an independent tort is sufficient to make out a separate UDTPA claim."). Accordingly, the Defendant's Motion is denied as to this claim.

### V. CONCLUSION

The Defendant's Motion is granted as to the trespass to chattels claim, the negligent misrepresentation claim, and the breach of implied covenant

claim.  The Defendant's Motion is denied as to the Magnuson Moss Act claim, the breach of contract claim, the breach of warranty claim, the negligence claim, the damage in bailment claim, and the unfair and deceptive trade practices claim.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Judgment on the Pleadings [Doc. 24] is **GRANTED IN PART** and **DENIED IN PART**, and the trespass to chattels claim, the negligent misrepresentation claim, and the breach of implied covenant claim in the Plaintiffs' Complaint [Doc. 1] are hereby **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

Signed: May 20, 2026

Martin Reidinger
Chief United States District Judge

18